Filed 3/12/24  P. v. Mitchell CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081223 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN362476) |
| KENYATTA MITCHELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and Christopher P. Beesley and Daniel Rogers, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Kenyatta Mitchell's 17-year sentence was reduced to 15 years when he was resentenced under Penal Code[1] section 1172.75 and two now-invalid prison prior enhancements under former section 667.5, subdivision (b), were stricken. In resentencing Mitchell, the trial court again imposed an upper term sentence based on prior convictions that were admitted by Mitchell in his original trial.

Mitchell claims for the first time on appeal that the resentencing provisions of section 1172.75, subdivision (d), violate his right to equal protection of the laws by treating defendants resentenced under section 1172.75 differently than defendants resentenced under other laws. As a remedy, he seeks a remand for a new resentencing hearing. We conclude Mitchell fails to demonstrate he was personally subjected to the allegedly disparate treatment of which he complains. For this reason, we decline to exercise our discretion to consider his forfeited constitutional challenge; even if we were to consider it, it would fail because Mitchell suffered no prejudice. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2016, a jury found Mitchell guilty of second degree robbery (§ 211). Mitchell then waived his right to a trial on prior convictions and admitted he suffered (1) at least two convictions for which he served a term of imprisonment, each supporting a one-year sentencing enhancement (§§ 667.5, former subd. (b), 668); (2) a conviction for a serious felony, supporting a five-year enhancement (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)); and (3) a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, 668).

---

[1] Further unspecified statutory references are to the Penal Code.

At his original sentencing in 2017, the trial court sentenced Mitchell to the upper term of five years for the robbery, doubled to 10 years due to the strike prior. The court imposed two consecutive one-year terms for the two prison priors plus a consecutive five-year term for the serious felony prior. His total term of imprisonment was 17 years.

In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.) to add former section 1171.1, later renumbered as section 1172.75 (Stats. 2022, ch. 58, § 12), to the Penal Code.[2] (Stats. 2021, ch. 728, §§ 1, 3.) Effective January 1, 2022, and subject to exceptions not relevant here, section 1172.75 declared sentence enhancements imposed under subdivision (b) of section 667.5 legally invalid and provided a mechanism for resentencing affected individuals. (§ 1172.75, subds. (a)–(c).) This change applied to Mitchell.

In September 2022, the trial court (with a different judge presiding) held a hearing to resentence Mitchell in accordance with section 1172.75.[3] The parties had agreed Mitchell was entitled to have both of his one-year prison prior enhancements stricken. They disagreed, however, on other aspects of Mitchell's resentencing.

Relying on *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and section 1385, among other authorities, Mitchell urged the trial court to dismiss his prior strike conviction and prior serious felony enhancement and to impose a middle-term sentence. The prosecution opposed further

---

[2] For simplicity, we shall refer to the statute as section 1172.75.

[3] Prior to resentencing, the trial court granted Mitchell's *Faretta* motion to represent himself. (See *Faretta v. California* (1975) 422 U.S. 806.)

3

reduction of Mitchell's sentence on the ground his numerous offenses and poor performance in prison showed he was a danger to public safety.

The trial court denied Mitchell's *Romero* motion to dismiss the prior strike after concluding the seriousness of his criminal history and the recency of the strike conviction brought him squarely within the spirit of the Three Strikes law. It elected to impose the serious felony enhancement based in part on its finding that Mitchell had continued to engage in violent conduct while in prison such that public safety would be endangered by dismissal of the enhancement. Finally, the trial court elected to impose the upper term, stating: "The [c]ourt is choosing the upper term based upon the prior convictions that were admitted by the defendant in his original trial, and thus proven beyond a reasonable doubt; and is relying on [California Rules of Court, rule] 4.421(b)(2) and (b)(3) to choose the upper term." After making its sentencing decision, the court "also note[d] pursuant to [section] 1172.75, the upper term was originally chosen."

The court thus resentenced Mitchell to a total prison term of 15 years, consisting of the upper term of five years for the robbery, doubled to 10 years for the strike prior, plus a consecutive five-year term for the prior serious felony.

DISCUSSION

I.

*Mitchell's Equal Protection Claim*

The only aspect of the judgment that Mitchell challenges on appeal is the trial court's selection of the upper term for his robbery conviction in resentencing him. He claims there are "two features" of the resentencing provisions of section 1172.75 that violate his right to equal protection of the laws.

4

The first is subdivision (d)(3) of section 1172.75, which provides that the resentencing court "may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).) Mitchell contends subdivision (d)(3) permits the resentencing court to impose the upper term on the basis of postconviction factors, with no requirement that the postconviction factors be proven beyond a reasonable doubt to a trier of fact or stipulated to by the defendant.

The second is subdivision (d)(4), which provides: "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1172.75, subd. (d)(4).) Mitchell interprets subdivision (d)(4) as authorizing courts to reimpose the upper term *because* it was originally imposed, "without the defendant's admission to the facts in aggravation or a true finding [beyond a reasonable doubt]" of the facts in aggravation. Based on this interpretation, he contends subdivision (d)(4) "simply dispenses" with the "proof requirements" set forth in sections 1170, subdivision (b)(2),[4] and

---

4      Section 1170, subdivision (b)(2), states in relevant part, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a

5

1170.1, subdivision (d)(2),[5] for defendants, like him, who are resentenced under section 1172.75.

He further contends that defendants resentenced under sections 1170.18 (authorizing recall of sentence and resentencing for certain felonies reclassified as misdemeanors) and 1172.1 (authorizing resentencing when the applicable sentencing laws are changed within 120 days of the date of commitment) get the benefit of the proof requirements of sections 1170, subdivision (b)(2), and 1170.1, subdivision (d)(2). He asserts that defendants resentenced under section 1172.75 are similarly situated with those resentenced under sections 1170.18 and 1172.1, and there is no rational basis for allowing trial courts to give upper term sentences to the first group of defendants under circumstances that would not justify imposition of the upper term on the second group of defendants. As a remedy for the asserted equal protection violation, he seeks a remand to the trial court for a new resentencing hearing.

term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

[5] Section 1170.1, subdivision (d)(2), states in relevant part, "[t]he court may impose a sentence exceeding the middle term [for a sentencing enhancement] only when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

## II.

### *Mitchell Fails to Show He Was Subjected to the Disparate Treatment That Forms the Basis of His Equal Protection Challenge*

Mitchell's challenge to subdivisions (d)(3) and (d)(4) of section 1172.75 suffers from an immediate, fatal flaw: he fails to show his sentence was impacted by the features of these provisions he identifies as creating an equal protection problem. As we will explain, his inability to demonstrate that his own equal protection rights were violated affects our willingness to entertain his challenge as well as its capacity for success on the merits.

First, as to subdivision (d)(3) of section 1172.75, Mitchell does not establish the trial court actually relied on postconviction factors (that is, the factors subdivision (d)(3) purportedly authorizes courts to consider even if not proven beyond a reasonable doubt or stipulated to by the defendant) as a basis for giving him the upper term. To the contrary, the record demonstrates the court did not rely on such factors in making this sentencing decision. The court gave a clear and finite statement of its reasons for choosing the upper term. The only facts it identified were the prior convictions previously admitted by Mitchell. These prior convictions, in turn, supported two aggravating circumstances. (See Cal. Rules of Court, rule 4.421(b)(2) ["The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness."]; *id.*, rule 4.421(b)(3) ["The defendant has served a prior term in prison or county jail under section 1170(h)."].) Nothing in the court's statement suggests its decision to impose the upper term was predicated on postconviction factors.

In an effort to demonstrate that the trial court erred and violated his equal protection rights, Mitchell points to statements the court made earlier

in the resentencing hearing with respect to his behavior in prison.  He asserts we must "presume" the court's upper term selection was influenced by these postconviction facts.  We disagree.

The trial court began the sentencing hearing by reciting all relevant sentencing standards,[6] as well as the full history of Mitchell's case.  It was in this context that the court gave a narrative description of his performance in prison.  However, the court did not announce its discretionary sentencing choices until after completing these prefatory remarks.  When it did so, it was careful to identify the discrete reasons underlying each decision.  When it addressed Mitchell's motion to dismiss his prior serious felony enhancement, for example, the court called out his "continued violent conduct while in prison" as a basis for concluding an early release would endanger public safety.  But when it announced its decision to impose the upper term and explained its reasons for doing so, it made no mention of his prison performance or any other postconviction factors.  On this record, we conclude the court did not rely on postconviction factors to impose the upper term.

---

[6]	The standards recited by the court included sections 1172.75, subdivision (d)(1), and 1385, subdivision (c).  (See §§ 1172.75, subd. (d)(1) ["Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety."], 1385, subd. (c)(2) ["Proof of the presence of one or more [listed mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety"; " 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."].)  To the extent Mitchell appears to interpret the trial court's prefatory remarks as indicating the court believed it could not resentence him to a total term of less than 15 years if doing so endangered public safety, we disagree with his interpretation.

Second, as to subdivision (d)(4) of section 1172.75, Mitchell also fails to show he was affected by its ostensibly relaxed proof requirements. Mitchell's equal protection attack is based on a particular gloss he gives this provision. Under his interpretation, the initial clause of subdivision (d)(4) authorizes courts to reimpose the upper term at resentencing *because* the upper term was previously imposed. (Cf. § 1172.75, subd. (d)(4) ["*Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Italics added.)].)

But the record of Mitchell's resentencing does not reflect that this was how the trial court understood, or applied, subdivision (d)(4). In its prefatory remarks, the court stated, "The [c]ourt *may not* impose the upper term *unless* the [c]ourt originally imposed the upper term." (Italics added.) This comment reveals the court viewed the initial clause of subdivision (d)(4) as *restricting* the scope of defendants eligible to receive the upper term at resentencing to those who previously received the upper term, not as creating a condition that itself justified the imposition of the upper term. Under the court's interpretation, such a defendant would be eligible for the upper term but could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to a trier of fact.

That the trial court gave subdivision (d)(4) this interpretation—which evades the alleged equal protection problem raised by Mitchell—is further supported by its statement of reasons for giving Mitchell the upper term for the robbery. The court expressly stated it was "choosing the upper term

9

based on the prior convictions that were admitted by [Mitchell] in his original trial, and thus proven beyond a reasonable doubt." The aggravating factors it identified relied on this criminal history. (See Cal. Rules of Court, rule 4.421(b)(2) & (3); *People v. Black* (2007) 41 Cal.4th 799, 819–820 [concluding defendant's criminal history established one of two aggravating circumstances that independently satisfy Sixth Amendment requirements and render him eligible for the upper term].)

Moreover, Mitchell concedes "the trial court cited [his] criminal record and [California Rules of Court,] rules 4.421[(b)(2)] and (3) as the reasons for imposing the upper term"; that the court "may impose the upper term based on a single factor in aggravation"; and his "prior convictions were lawfully proven and the basis to impose the upper term." Although the court also "note[d] pursuant to [section] 1172.75, the upper term was originally chosen," it merely noted that this was Mitchell's original sentence; it did not say it was choosing the upper term because he previously received it. Moreover, the court's belief that it needed to make this notation is consistent with our conclusion that it believed only defendants previously sentenced to the upper term were eligible to receive the upper term at resentencing.

For these reasons, we conclude that Mitchell's sentence was not affected by the asserted disparity in the proof requirements for imposing an upper term sentence in subdivisions (d)(3) and (d)(4) of section 1172.75 as compared with other resentencing statutes.

### III.

*We Decline to Overlook Mitchell's Forfeiture of His Equal Protection Challenge Because He Fails to Demonstrate His Own Rights Were Violated*

Mitchell did not raise his equal protection challenge in the trial court. Citing *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 (*Hale*), and *In re Sheena K.*

10

(2007) 40 Cal.4th 875, 887–888 (*Sheena K.*), he claims we may nevertheless consider it for the first time on appeal because it raises a pure issue of law. He asserts that we have discretion to do so because it raises a constitutional issue as well as an important question of statutory interpretation.

We agree with Mitchell that whether to entertain his belated challenge is a matter committed to our discretion. "Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal." (*Sheena K.*, *supra*, 40 Cal.4th at p. 880.) " ' "[A] constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " (*Id.* at pp. 880–881; accord, *People v. McCullough* (2013) 56 Cal.4th 589, 593 (*McCullough*).)  Further, "the forfeiture rule applies in the context of sentencing as in other areas of criminal law" (*Sheena K.*, at p. 881), and encompasses challenges to the constitutionality of penal statutes relied upon at sentencing (see *People v. Marchand* (2002) 98 Cal.App.4th 1056, 1060–1061 [defendant forfeited due process challenge to constitutionality of sex offender registration statute by failing to object to its assertedly deficient proof requirements at sentencing], cited with approval in *Sheena K.*, at p. 887, fn. 7).

However, application of the forfeiture rule is not automatic. (*McCullough*, *supra*, 56 Cal.4th at p. 593.)  "Thus, an appellate court may review a forfeited claim—and '[w]hether or not it should do so is entrusted to its discretion.' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 887, fn. 7.)  *Hale*, cited by Mitchell, is consistent with the conclusion we have discretion in deciding whether to entertain his equal protection challenge.  (See *Hale*, 22 Cal.3d at p. 394 [holding an unpreserved challenge to validity of a statute "*may*" be

11

examined for on appeal where it raised a pure question of law presented on undisputed facts (italics added)].)

*Sheena K.*, also cited by Mitchell, carved out an exception to the forfeiture rule under which appellate courts are required to consider certain unpreserved constitutional challenges. However, this exception does not apply here. In *Sheena K.*, a defendant argued for the first time on appeal that a probation condition requiring her not to " 'associate with anyone disapproved of by probation' " was facially vague and overbroad because it "fail[ed] to specify that [the] defendant *know* which persons were disapproved of." (*Sheena K.*, *supra*, 40 Cal.4th at p. 880.) Our high court held the probationer did not forfeit this challenge by failing to raise it in the trial court, reasoning it was similar to "a challenge to an unauthorized sentence that is not subject to the rule of forfeiture," was "capable of correction without reference to the particular sentencing record developed in the trial court," and presented an asserted error that was a pure question of law, "easily remediable on appeal by modification of the condition." (*Id.* at pp. 887, 888.)

For two reasons, Mitchell's equal protection challenge to subdivisions (d)(3) and (d)(4) of section 1172.75 falls outside the forfeiture exception of *Sheena K.* First, the constitutional challenge Mitchell raises is not properly categorized as a facial challenge. " ' A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual.' [Citation.] A facial challenge seeks to void the statute as a whole by showing that ' "no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all its applications." ' " (*In re D.L.* (2023) 93 Cal.App.5th 144, 157.) "Unlike a 'facial challenge,' an 'as[-]applied' challenge may seek 'relief from a specific application of a facially valid statute

12

or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability *as a result of the manner or circumstances in which the statute or ordinance has been applied.*'" (*Ibid.*, italics added.) "[T]he 'minimum' our [Supreme Court's] cases have accepted [to present a facial challenge to a statute] is a showing that the statute is invalid 'in the *generality or great majority* of cases.'" (*People v. Buenrostro* (2018) 6 Cal.5th 367, 388 (*Buenrostro*).)

Applying these descriptions compels the conclusion that Mitchell's constitutional challenge is an as-applied rather than a facial challenge. Mitchell does not contend subdivisions (d)(3) and (d)(4) of section 1172.75 are invalid " 'in the *generality or great majority* of cases.'" (*Buenrostro*, *supra*, 6 Cal.5th at p. 388.) He contends subdivision (d)(3) violates equal protection, but only when relied upon to impose an upper term sentence based on proof lesser than the proof required under other statutes. He does not argue that it violates equal protection in other contexts. Indeed, although the trial court in this case expressly relied on postconviction factors—Mitchell's misconduct in prison—to deny his motion to dismiss the prior serious felony sentencing enhancement, Mitchell does not argue *this* application of subdivision (d)(3) is violative of his (or anyone else's) equal protection rights.

Similarly, Mitchell contends subdivision (d)(4) of section 1172.75 violates equal protection, but only when interpreted to authorize resentencing courts to choose the upper term because the upper term was originally imposed. He does not contend it violates equal protection when interpreted to limit eligibility for the upper term to those defendants who previously received the upper term. These are as-applied challenges, not facial challenges, because they are context-dependent: they seek " 'relief from a specific application of a facially valid statute or ordinance to an individual

13

or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied.' " (*In re D.L.*, *supra*, 93 Cal.App.5th at p. 157.) This is the first reason *Sheena K.*'s forfeiture exception does not apply here.

The second reason is that the alleged equal protection violations Mitchell raises are not "capable of correction without reference to the particular sentencing record developed in the trial court[.]" (*Sheena K.*, *supra*, 40 Cal.4th at p. 887.) Rather, they can be addressed only by reviewing the sentencing record to assess the basis of the court's upper-term decision and, if sustained, they require a remand for the trial court to reconsider its decision based only on proper factors. Indeed, as the People point out, this is precisely the remedy Mitchell seeks.

Therefore, *Sheena K.* does not apply, and our consideration of Mitchell's challenge, if at all, is discretionary. We recognize reviewing courts generally exercise their discretion to consider forfeited claims where they present constitutional issues or important questions of public interest. (See, e.g., *Hale*, *supra*, 22 Cal.3d at p. 394.) However, we do not believe this is an appropriate case in which to do so.

Mitchell's failure to show he was affected by the aspects of subdivisions (d)(3) and (d)(4) of section 1172.75 he claims are violative of equal protection triggers several related principles which, when considered together, counsel against entertaining his attack on these provisions. The first principle is that "we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us." (*People v. Williams* (1974) 16 Cal. 3d 663, 667, accord *Facebook, Inc. v. Superior Court* (*Hunter*) (2018) 4 Cal.5th 1245, 1275, fn. 31; see *Santa Clara County Local Transportation Authority v.*

14

*Guardino* (1995) 11 Cal.4th 220, 230–231, quoting *Lyng* v. *Northwest Indian Cemetery Prot. Assn.* (1988) 485 U.S. 439, 445 [" 'A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.' "].)  Here, consideration of Mitchell's challenge does not stand to make any difference in his sentence.  Far from being "absolutely required" (*Williams*, at p. 667) it is entirely unnecessary for us to consider the merits of his challenge in order to dispose of his appeal.  This consideration weighs strongly against exercising our discretion to overlook Mitchell's forfeiture.

Second, because Mitchell's rights to equal protection were not violated by the manner in which the trial court resentenced him, any consideration we might give his attack on the validity of subdivisions (d)(3) and (d)(4) of section 1172.75 could only be based on hypothetical scenarios in which other defendants' rights might be violated under the circumstances he describes.  Considering such a challenge would violate the "well-settled rule that courts should 'avoid advisory opinions on abstract propositions of law.' " (*People v. Watson* (2021) 64 Cal.App.5th 474, 489, quoting *In re William M.* (1970) 3 Cal.3d 16, 23, fn. 14.)  This principle, too, weighs heavily against exercising our discretion to consider Mitchell's challenge.

Finally, we observe the usual rule is that " ' "[o]ne who seeks to raise a constitutional question must show that his rights are affected injuriously by the law which he attacks and that he is actually aggrieved by its operation." ' " (*People v. Conley* (2004) 116 Cal.App.4th 566, 576; see *Broadrick v. Oklahoma* (1973) 413 U.S. 601, 610 ["a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court"]; *Teal v. Superior Court* (2014) 60

15

Cal.4th 595, 599 [" *To have standing, a party must be beneficially interested in the controversy*; that is, he or she must have "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." [Citation.] The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical.' "].) We do not specifically hold Mitchell lacks standing to assert his challenge, because neither the Attorney General nor Mitchell have addressed the issue. However, the fact that defendants in Mitchell's position are generally precluded from proceeding with their constitutional claims further persuades us the more appropriate course is to decline to exercise our discretion to consider Mitchell's challenge here.

For all of these reasons, we believe the more prudent course is to decline to exercise our discretion to consider Mitchell's equal protection challenge to subdivisions (d)(3) and (d)(4) of section 1172.75. Consideration of this challenge is better reserved for a case actually affected by it; this will ensure the issue is properly framed and contextualized in an actual set of facts and will encourage full development of the relevant issues by the parties, all of which will ultimately lead to a more informed judicial decision.

IV.

*Even If We Were to Overlook Mitchell's Forfeiture, His Challenge Would Fail on the Merits*

Even if we were to entertain Mitchell's challenge, we would reject it because he was not prejudicially affected by the aspects of section 1172.75, subdivisions (d)(3) and (d)(4) he identifies as unconstitutional.

Mitchell brings his equal protection challenge to subdivisions (d)(3) and (d)(4) of section 1172.75 as a basis for obtaining a new resentencing hearing.

16

To grant him this relief, we would have to reverse his existing sentence. But we cannot reverse his existing sentence unless we first find the court committed a prejudicial error in imposing it. (Cal. Const., art. VI, § 13; see *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109–1110 [before remanding to redress erroneous failure to apply proof requirements of § 1170, subd. (b)(2), at sentencing, reviewing court must first engage in harmless error review; "error in itself is not ground for reversal"]; *People v. Lopez* (2022) 78 Cal.App.5th 459, 465 [failure to comply with proof requirements of § 1170, subd. (b)(2), is not structural error].)

Mitchell fails to overcome this essential hurdle to obtaining the remedy he seeks. In his opening brief, Mitchell asserts that his sentence must be reversed under the federal and state standards for evaluating prejudice. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [federal constitutional error does not require reversal if harmless beyond a reasonable doubt]; *People v. Watson* (1956) 46 Cal.2d 818, 836–837 [error of state law requires reversal only when it is reasonably probable a more favorable result would have been reached absent the error].) But reversal could not be required under any standard unless the trial court actually relied on improper factors to give him an upper term sentence. For the reasons we have discussed, Mitchell fails to establish this occurred: he does not succeed in showing that the court relied on postconviction factors, nor does he succeed in demonstrating that the court based its upper term decision on the fact that he originally received the upper term.

## DISPOSITION

The judgment is affirmed.


DO, J.

I CONCUR:


DATO, Acting P. J.

CASTILLO, J., Concurring.

Like my colleagues in the majority, I would affirm. Unlike my colleagues, however, I reach that result by resolving the important and pure legal question Kenyatta Mitchell raises: whether subdivisions (d)(3) and (d)(4) of Penal Code section 1172.75 treat defendants resentenced under section 1172.75 differently from defendants resentenced under other laws in a manner violative of equal protection.

I.

My colleagues in the majority decline to exercise discretion to reach the merits of this issue because they "do not believe this is an appropriate case in which to do so." (Maj. opn., at p. 14.) They conclude Mitchell's claim is solely a forfeited "as-applied" challenge (maj. opn., at pp. 13-14), and as the trial court relied on only appropriately considered aggravating factors in resentencing Mitchell to the upper term, his "sentence was not affected by the asserted disparity in the proof requirements for imposing an upper term sentence in subdivisions (d)(3) and (d)(4) of section 1172.75 as compared with other resentencing statutes." (Maj. opn., at p. 10.) In their view, "[c]onsideration of this challenge is better reserved for a case actually affected by it." (Maj. opn., at p. 16.)

To the extent Mitchell argues the trial court relied on impermissible postconviction factors in his particular resentencing, I, too, decline to address the claim's merits. Applying the forfeiture rule to a claim seeking "modif[ication of] a sentence . . . premised upon the facts and circumstances of the individual case" encourages objection to the sentence at the time it "initially is imposed in order to permit the trial court to consider, and if appropriate in the exercise of its informed judgment, to effect a correction." (*In re Sheena K.* (2007) 40 Cal.4th 875, 885, 889 (*Sheena K.*).)

Both parties, however, additionally contest and fully brief the constitutionality of section 1172.75 divorced from the individual facts of Mitchell's case, disputing whether the statute impermissibly exempts trial courts resentencing defendants under section 1172.75 from the universal rule that eligibility for any upper-term sentence depends on "facts that have been established consistently with Sixth Amendment principles." (*People v. Black* (2007) 41 Cal.4th 799, 813.) Mitchell contends this is "a pure issue of law which can be raised for the first time on appeal," and the People classify Mitchell's claim as "a facial equal protection challenge" in which the details of Mitchell's underlying crime, trial, and sentencings are irrelevant. (*Zuckerman v. State Board of Chiropractic Examiners* (2002) 29 Cal.4th 32, 38 (*Zuckerman*).)

A statute cannot violate equal protection if it treats all persons the same. (*People v. Castel* (2017) 12 Cal.App.5th 1321, 1326.) Interpreting section 1172.75 to determine whether it treats any persons differently at all is a "pure question of law," only "requir[ing] the review of abstract and generalized legal concepts—a task that is well suited to the role of an appellate court." (*Sheena K.*, *supra*, 40 Cal.4th at pp. 885, 888.) Moreover, this is "an important question of law" appropriately "reviewed on the merits by [an] appellate court notwithstanding the applicability of the forfeiture rule." (*Id.* at p. 888.) Mitchell raises a timely and important question as to the validity and constitutionality of a relatively new resentencing provision of wide applicability. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6; see Senate Rules Com., Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended Sept. 1, 2021, pp. 5-6 [thousands of requests to resentence under section 1172.75 are likely in even single counties].) Appeals of the numerous resentencings under section 1172.75 will continue for the foreseeable future.

2

(Pen. Code, § 1172.75, subd. (c)(2) [resentencing deadline only recently passed on Dec. 31, 2023].) As such, appellate review of Mitchell's claim "may save . . . time and government resources that otherwise would be expended in" many courts interpreting and applying, and subsequently redressing, a statutory provision potentially "invalid as a matter of law." (*Sheena K.*, *supra*, 40 Cal.4th at p. 885.)

For these reasons, I embrace Mitchell's facial challenge to the constitutionality of Penal Code section 1172.75, subdivisions (d)(3) and (d)(4), and write separately to address his claim on the merits.

## II.

## A.

In reviewing a facial constitutional challenge to a statute, a court considers only the statutory text and not its application to any given individual. (*Zuckerman*, *supra*, 29 Cal.4th at pp. 38-39.) A statute's proper construction is a question of law decided de novo. (*People v. Lewis* (2021) 11 Cal.5th 952, 961 (*Lewis*).)

In interpreting a statute, the goal is to ascertain the Legislature's intent so as to effectuate the statute's purpose. (*Lewis*, *supra*, 11 Cal.5th at p. 961.) The court first gives "the statute's words . . . a plain and commonsense meaning." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "If the language is unambiguous, the plain meaning controls." (*Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 519.) The words, however, must be construed in context, so a court must look to the entire section as well as "the statutory framework as a whole" to harmonize terms as possible. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.) The court should avoid a construction that renders a provision "surplusage" (*People v. Cobb* (2010) 48 Cal.4th 243, 253) and "may reject a

3

literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results." (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 27 (*Simpson*).)

Under the doctrine of constitutional avoidance, a statute should not be construed to violate the Constitution if any other construction is viable. (*People v. Garcia* (2017) 2 Cal.5th 792, 804 (*Garcia*).)

B.

Mitchell first challenges subdivision (d)(3) of section 1172.75, which allows the court to "consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated[;] evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence[;] and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

Mitchell argues this provision "permits the trial court to consider postconviction factors which will obviously be facts neither admitted by the defendant in court nor proven true [beyond a reasonable doubt] to a trier of fact." Because this provision does not apply to "defendants who are resentenced under other provisions of law," Mitchell claims section 1172.75 treats resentenced defendants differently.

The People respond that Mitchell relies on "a flawed construction" of section 1172.75. "[B]y its terms" and read in conjunction with the rest of section 1172.75, subdivision (d)(3) "indicates [its] postconviction factors are to be considered for ameliorative purposes." Immediately preceding subdivisions (d)(1) and (d)(2) require, respectively, (1) a lesser sentence absent clear and convincing evidence it would endanger public safety and

(2) application of all changes in sentencing law that reduce prison terms, promote uniformity, and eliminate disparity. (§ 1172.75, subds. (d)(1)-(2).) Thus, subdivision (d)(3)'s factors are to be used to determine the appropriateness of a lower term rather than a higher one.

Either interpretation of subdivision (d)(3) is plausible if read in isolation. But, read in context, Mitchell's proposed reading contradicts the plain terms of subdivision (d)(2), which requires the trial court to "apply any other changes in law that reduce sentences." (§ 1172.75, subd. (d)(2).) Further, as section 1172.75 was added to the Penal Code at the same time section 1170 was amended to require that circumstances in aggravation relied on to impose an upper-term sentence be established in accordance with the Sixth Amendment, Mitchell's proposed construction contradicts "the legislative intent apparent in the statute" and "would lead to absurd results." (*Simpson, supra*, 49 Cal.4th at p. 27; § 1170, subd. (b)(2).)

Section 1172.1, added to the Penal Code concurrently with section 1172.75, further supports the People's proposed interpretation of subdivision (d)(3). Like section 1172.75, section 1172.1 requires any new sentence to (1) not exceed the initial sentence and (2) comply with any changes of law that reduce sentences. (Compare § 1172.75, subds. (d)(1)-(2), with § 1172.1, subds. (a)(1)-(2).) Section 1172.1 also permits the resentencing court to consider the same postconviction factors as subdivision (d)(3) of section 1172.75. (§ 1172.1, subd. (a)(5).) In section 1172.1, those factors appear in a subdivision that also includes section 1170, subdivision (b)(6)'s factors that justify presumptive imposition of the lower term, reinforcing the Legislature's intent that the factors in section 1172.75, subdivision (d)(3) are to be considered to reduce, rather than increase, sentences. (Compare § 1172.1, subd. (a)(5), with § 1170, subds. (b)(6)(A)-(C).)

5

I thus conclude subdivision (d)(3) of section 1172.75 does not impermissibly allow its specified postconviction factors to be considered as circumstances in aggravation and does not treat defendants resentenced under section 1172.75 differently from any other resentenced defendants.

C.

Mitchell next challenges subdivision (d)(4), which provides: "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1172.75, subd. (d)(4).)

Mitchell posits that the opening subordinate clause applies to the entirety of the following sentence, thus excluding defendants originally sentenced to the upper term from the requirement that circumstances in aggravation be stipulated to by the defendant or proven beyond a reasonable doubt to impose the upper term. The People disagree but concede Mitchell's interpretation is plausible. They urge, however, application of the doctrine of constitutional avoidance and the presumption that the Legislature is aware of related statutory sections and "intends to maintain a consistent body of rules" to construe section 1172.75 in a manner consistent with, respectively, (1) a criminal defendant's Sixth Amendment rights and (2) other relevant Penal Code provisions. (*People v. Galvan* (2008) 168 Cal.App.4th 846, 854.)

Again, both interpretations of subdivision (d)(4) are reasonable if interpreting the subdivision in isolation. Nonetheless, considering the provision contextually, I conclude subdivision (d)(4) requires circumstances in

6

aggravation to be proven true beyond a reasonable doubt whether or not the upper term was originally imposed.

Mitchell's proposed reading runs afoul of section 1172.75's own express requirement that the resentencing court apply any changes in law that reduce sentences, which would encompass section 1170's requirement that circumstances in aggravation used to justify an upper-term sentence be proven beyond a reasonable doubt. (See § 1172.75, subd. (d)(2); § 1170, subd. (b)(2).) Nor is it reasonable to conclude that the Legislature, enacting section 1172.75 at the same time it amended section 1170, intended section 1172.75 to contradict those new amendments. Mitchell's interpretation is thus contrary to the apparent legislative intent. Most importantly, however, Mitchell's reading would needlessly result in a statute that violates both the federal and state Constitutions. (*Simpson, supra,* 49 Cal.4th at p. 27; *Garcia, supra,* 2 Cal.5th at p. 804.)

Meanwhile, a constitutional reading exists if the initial subordinate clause modifies only the independent clause and not the second subordinate clause. Under such a reading, a court could not impose a term exceeding the middle term unless (1) the upper term was originally imposed *and* (2) circumstances in aggravation proven beyond a reasonable doubt justified the upper term. This construction gives purpose to each subordinate clause. The first subordinate clause is consistent with section 1172.75's requirement that "[r]esentencing pursuant to this section shall not result in a longer sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).) The second subordinate clause is consistent with other sentencing laws that require sentencing to the upper term to be justified by circumstances in aggravation proven true beyond a reasonable doubt. (See § 1170, subd. (b)(2); § 1170.1, subd. (d)(2).)

Accordingly, applying the doctrine of constitutional avoidance, I conclude subdivision (d)(4) does not treat defendants resentenced under section 1172.75 differently from defendants resentenced under any other provision. (*Garcia, supra,* 2 Cal.5th at p. 804.)

\* \* \*

Because subdivisions (d)(3) and (d)(4) of section 1172.75 are consistent with other resentencing provisions and do not treat resentenced defendants differently, Mitchell's equal protection claim fails. (See *People v. Jacobs* (1984) 157 Cal.App.3d 797, 804-805.)

### III.

For these reasons, I concur only in the majority's decision to affirm.

CASTILLO, J.